UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| PRIMARY SURGICAL, d/b/a ZIMMER DAVIS, | Civil No. 06-459 (JRT/FLN) |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| KYLE W. SWARTOUT and SMITH & NEPHEW, INC., | |
| Defendants. | |

Stephen C. Landon, **CADWELL SANFORD DEIBERT & GARRY, LLP**, 200 East Tenth Street, Suite 200, Sioux Falls, SD 57101; and Tracey Holmes Donesky, **LEONARD STREET AND DEINARD, PA**, 150 South Fifth Street, Suite 2300, Minneapolis, MN 55402, for plaintiff.

Matthew E. Damon, **HALLELAND LEWIS NILAN & JOHNSON P.A.**, 600 U.S. Bank Plaza South, 220 South Sixth Street, Minneapolis, MN 55402, for defendants.

Plaintiff Primary Surgical, d/b/a Zimmer Davis ("Zimmer"), has requested a preliminary injunction pursuant to Federal Rule of Civil Procedure 65(b) against its former employee, Kyle Swartout, and his new employer, Smith & Nephew. On February 7, 2006, the Court granted a temporary restraining order intended to maintain the status quo until the Court could consider plaintiff's motion after full briefing and hearing. As explained below, the Court now grants in part plaintiff's motion for a preliminary injunction.

## BACKGROUND

Zimmer sells products in the medical industry.  Swartout began employment with Zimmer on January 1, 2004 and worked as a Trauma Representative in Bismarck, North Dakota.  On July 1, 2005, Swartout began working for Zimmer in Minneapolis, Minnesota.

As a Trauma Representative, Swartout established buying relationships with personnel working within the hospitals assigned to him by Zimmer.  The five trauma representatives in Minneapolis were also required to rotate "call" coverage, so each gave sporadic attention to Zimmer customers who were not within their assigned territory.

Swartout signed an employment agreement with Zimmer that contains two restrictive covenants.  Section 10.1 contains the Covenant Not to Compete.  It states that Swartout is prohibited from "provid[ing] services in the Territory" for any competitor for 24 months after termination of his employment.  The Territory is defined as "the geographic location of Restricted Customers, that is, their physical location."  Section 10.2 contains the Covenant Not to Solicit Customers.  It prohibits Swartout from soliciting any Restricted Customer.  The definition of Restricted Customer includes actual customers of Zimmer that were "solicited or serviced directly or indirectly by Employee or any person supervised or managed by Employee."  Zimmer gave Swartout a list called the "Proposed Territory," and Swartout received commissions only for sales made to the hospitals on his Territory list.

Zimmer terminated Swartout's employment on September 26, 2005 for job-related "misconduct."  Specifically, Swartout provided sales volume information to a former

employee, who currently works for Smith & Nephew. Smith & Nephew provided Swartout an offer letter on November 22, 2005. The offer was contingent on "satisfactory review of any non-compete clauses in contracts from past employment." Smith & Nephew reviewed Swartout's employment agreement and concluded that the agreement's definition of "Territory" was limited to those customers whom he had called while employed by Zimmer. By letter dated November 28, 2005, Swartout informed Zimmer that Smith & Nephew hired Swartout.

Zimmer asserts that Smith & Nephew is a direct competitor of Zimmer and almost all of Zimmer's product line, and that Zimmer has "reason to believe" that Swartout has shared or will share Zimmer's trade secrets and confidential information with Smith & Nephew. As an employee of Smith & Nephew, Swartout attended various conferences for salespersons of medical products and has signed into the operating room at several local hospitals that are customers of Zimmer. Defendants respond, however, that when Swartout joined Smith & Nephew, he was specifically instructed not to use any confidential or proprietary information he might have gained while employed by Zimmer, and that none of Swartout's assigned Smith & Nephew accounts are customers to whom he was assigned as a Zimmer employee.

Zimmer seeks a preliminary injunction to enforce its employment agreement with Swartout.

## ANALYSIS

Injunctive relief is appropriate where the moving party shows that: (1) there is a likelihood of success on the merits; (2) the movant will suffer irreparable harm absent the injunction; (3) the balance of harms favors the movant; and (4) the public interest favors the movant. *Dataphase Sys., Inc. v. C L Sys., Inc.,* 640 F.2d 109, 113 (8th Cir. 1981). "None of these factors by itself is determinative; rather, in each case the four factors must be balanced to determine whether they tilt toward or away from granting a preliminary injunction." *West Publ'g Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1222 (8th Cir. 1986).

**I.    Success On The Merits**

    **A.    Validity Of The Restrictive Covenants Under South Dakota Law**

Defendants do not dispute that the non-disclosure and non-solicitation agreements are valid, but they argue that the non-compete agreement is invalid under South Dakota law because it is not restricted to a specifically defined geographical area.[1]

South Dakota law voids contracts that are in restraint of trade as a matter of public policy, but provides several enumerated exceptions to this general policy. S.D. Codified Laws §§ 53-9-8 to 53-9-12. Section 53-9-11 provides one of the exceptions:

> An employee may agree with an employer at the time of employment or at any time during his employment not to engage directly or indirectly in the same business or profession as that of his employer for any period not exceeding two years from the date of termination of the agreement and not to solicit existing customers of the employer within a specified county, first or second class municipality or other specified area for any period not

---

[1] The parties agree that South Dakota law covers this employment agreement.

exceeding two years from the date of termination of the agreement, if the employer continues to carry on a like business therein.

S.D. Codified Laws § 53-9-11.

Defendants argue that the non-compete agreement at issue here is limited in terms of customers and not geography, and therefore is not within the statutory exception. Zimmer replies that the statute only requires geographical restrictions for non-solicitation agreements, but not for non-compete agreements.

The plain language of the statute does not require a geographical limitation for non-compete agreements. *See Am. Rim & Brake v. Zoellner*, 382 N.W.2d 421, 423 (S.D. 1986) (holding that restrictive covenants are reasonable without more if they fulfill the statutory requirements). Therefore, the Court concludes that the restrictive covenants at issue are valid under South Dakota law.

### B. The Scope Of The Restrictive Covenants

Whether Zimmer has a reasonable likelihood of success in proving a breach of the non-compete and non-solicitation agreements depends on how those agreements are interpreted.[2] Because the non-compete agreement is defined in terms of the geographic location of the Restricted Customers, the non-compete and non-solicitation agreements

---

[2] Zimmer argues that there is a risk that Swartout may disclose confidential information, but the controversy centers on the scope of the non-compete and non-solicitation agreements because defendants specifically instructed Swartout not to use any confidential information that he gained from his employment with Zimmer.

essentially converge into one obligation.[3]  The definition of Restricted Customers includes actual customers of Zimmer that were "solicited or serviced directly or indirectly by Employee or any person supervised or managed by Employee."  The parties dispute which hospitals are included in the definition of Restricted Customers.

Zimmer argues that Restricted Customers include all customers that Swartout actually contacted while employed by Zimmer, including the customers that Swartout served on any occasion while providing "call" coverage.  Defendants argue that Restricted Customers are those to which Swartout was specifically assigned and with which he developed relationships.  Swartout testified that his managers specifically told him that his Restricted Customers did not include hospitals that he contacted through his "call" coverage.

The Court concludes that Zimmer has a reasonable likelihood of success in showing that Swartout has violated or will violate the non-compete and non-solicitation agreements.  Methodist Hospital has been identified by Swartout as one of the customers on which he is now calling for Smith & Nephew.  The record reflects that while he was employed by Zimmer, Swartout contacted Methodist Hospital on multiple occasions, and even participated in surgeries.

An underlying reason for restrictive covenants is to protect customer relationships that are built through employee good will.  As such, this factor weighs towards granting a

---

[3] Although Zimmer initially argued that the non-compete agreement includes the entire Twin Cities, Zimmer offered a narrower interpretation at the hearing on this motion. Specifically, Zimmer argues that the non-compete is restricted to those hospitals that Swartout actually contacted while he was employed with Zimmer.

preliminary injunction that is limited to those hospitals with which Swartout had sufficient customer contact to be able to generate good will – namely, hospitals for which Swartout participated in surgeries as the primary sales representative.

## II.     Irreparable Harm

The Court finds that Zimmer's business is "relationship driven," and that Swartout's employment with Smith & Nephew may put Zimmer at risk of losing customer relationships. Lost sales and revenue from lost customers would be difficult to apportion in a claim for damages. *N.I.S. Corp. v. Swindle*, 724 F.2d 707, 710 (8th Cir. 1984) (concluding that breach of non-compete would result in irreparable harm); *Curtis 1000 v. Youngblade*, 878 F. Supp. 1224, 1273 (D. Iowa 1995) (summarizing cases where harm from violation of non-solicitation agreements was found irreparable). Accordingly, this factor weighs towards granting a preliminary injunction.

## III.    Balance Of Harms And Public Interest

Defendants argue that an injunction would prevent Swartout from utilizing his skills in the occupation of his choice, would prevent Smith & Nephew from using the services of a highly skilled employee, and that the public interest favors permitting employees to utilize their skills in the occupations of their choice. Zimmer argues that there is a public interest in protecting legitimate business interests, including customer goodwill and confidential information. The Court does not find that these factors weigh heavily one way or the other.

## IV. Conclusion

The Court finds Zimmer is entitled to a limited preliminary injunction to prevent irreparable harm until the merits of its claims are resolved at trial.

**ORDER**

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for a Preliminary Injunction [Docket No. 2] is **GRANTED in part** and **DENIED in part** as follows.

    a. Defendant Swartout is enjoined from disclosing to anyone, either directly or indirectly, or for using for his own benefit, or for the benefit of any other, any trade secrets, proprietary, or confidential information gained by Swartout during his employment with Zimmer; and

    b. Defendant Swartout is enjoined from directly or indirectly soliciting, or accepting any business from the following hospitals: Abbott-Northwestern Hospital, Hennepin County Medical Center, Mercy Hospital, St. Cloud Hospital, Unity Hospital, Ridgeview Medical Center, and Methodist Hospital.

    c. In all other respects, the motion is **DENIED**.

2. This Order shall remain in effect until further order of this Court dissolving this Preliminary Injunction.

3. In accordance with Rule 65(c) of the Federal Rules of Civil Procedure, the preliminary injunction shall become effective upon the plaintiff's posting a bond with the Clerk of Court in the amount of Five Thousand Dollars ($5,000.00) for the payment of such costs and damages as may be incurred or suffered by defendants in the event defendant Swartout is found to have been wrongfully enjoined or restrained. Until this bond is posted, the injunction will not be effective.

DATED: March 24, 2006
at Minneapolis, Minnesota.

                                            s/ John R. Tunheim
                                            JOHN R. TUNHEIM
                                            United States District Judge